**Joel OLIVERA, Plaintiff–Appellant,**

**v.**

**TOWN OF WOODBURY, NEW YORK, Lt. Richard Shore, of the Town of Woodbury Police Department, and "John Doe 1–N," unidentified officers of the Town of Woodbury Police Department, Defendants–Appellees.**

No. 03–7931.

United States Court of Appeals, Second Circuit.

May 21, 2004.

Robert N. Isseks, Middletown, New York, for Appellant.

Anthony B. Corleto (Joelle M. Ehmka, on the brief), Corleto & Associates, P.C., White Plains, New York, for Appellees.

Present: LEVAL, KATZMANN, Circuit Judges, and MURTHA,* District Judge.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be, and it hereby is, **AFFIRMED.**

We assume familiarity with this case, including the district court's decision,

---

* The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

which we review *de novo. Caldarola v. County of Westchester*, 343 F.3d 570, 573 (2d Cir.2003). The critical, undisputed facts are these: When defendant-appellee Lt. Richard Shore presented the photographer and reporter from the *Times Herald Record* with an envelope containing plaintiff-appellant Joel Olivera's so-called international driver's permit, Shore merely told them that the envelope contained examples of inauthentic identification. On his own, the photographer chose Olivera's fake ID from a collection that included photos of Hispanic and non-Hispanic (appearing) people. There is no evidence in the record that Shore suggested that the identification cards were used in connection with shoplifting or that Olivera was suspected of that crime. Any assumptions to the contrary by the photographer or others at the *Record* were wholly unwarranted, notwithstanding the fact that the "[p]redominant[ ] ... theme" of Shore's interview concerned shoplifting. The photographer and the *Record*'s decision to portray Olivera in a false light as a shoplifter, therefore, was not the "natural consequence[ ] of [Shore's] actions," *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and Shore cannot be presumed to have intended it.

Accordingly, although we sympathize with Olivera for the embarrassment he suffered, there is no basis for inferring that Shore acted with any intent to discriminate against Olivera based on his race or for any other reason, and Olivera's equal protection claims, whether viewed through 42 U.S.C. § 1983 or § 1981, fail. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362–63 (2d Cir.2002). Olivera's Fourth Amendment claim fails because it was not unreasonable to present Olivera's identification to the *Record* for what it was: fake. The police have a legitimate interest in reporting the types and appearances of inauthentic identification cards, and although there are limits on how the police may publicize their law enforcement efforts, *compare Paul v. Davis*, 424 U.S. 693, 695, 712–13, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) *with Lauro v. Charles*, 219 F.3d 202, 203 (2d Cir.2000), Olivera has failed to show that his privacy interests outweighed the legitimate government purposes served by *Shore's* actions (as distinct from the *Record*'s), *see Caldarola*, 343 F.3d at 572. Finally, because Shore's behavior did not amount to a " 'conscience-shocking' exercise[ ] of power by [a] government actor[ ]," no substantive due process claim lies against the defendants, either. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir.2001).

For these reasons, the judgment of the district court is **AFFIRMED**.